IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SARAH BRYANT, as Personal Representative of the Estate of ADAM BRYANT, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>VIGO COUNTY and THE VIGO COUNTY BOARD OF COMMISSIONERS; DEREK FELL, Individually and in his official capacity as Sheriff of Vigo County; CHARLEY FUNK, Individually and in his Official capacity as Captain of the Vigo County Jail; SAMANTHA TROUTMAN, Individually; AIDAN HARRISON, Individually; CASEY LEE, Individually; EMILY MEADOWS, Individually; MELISSA AGUADO, Individually; DILER MAWI, Individually; QUALITY CORRECTIONAL CARE, LLC, POLLY DECKER, Individually; KRISTA SEXTON-COX, Individually; MELISSA ISLE, Individually; JASMINE GILL, Individually; TATUM LYEWSKI, Individually; SHEILA RICE, Individually; and MARK BENDER, Individually;<br><br>Defendants. | CIVIL ACTION<br><br>Case No: _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Comes now Plaintiff, Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased, by counsel, and files her Complaint and Demand for Jury Trial against Vigo County and Vigo County Board of Commissioners ("Vigo County"); Derek Fell, Individually and in his official capacity as Sheriff of Vigo County; and Charley Funk, Individually and in his official capacity as Captain of the Vigo County Jail; Samantha Troutman, Individually; Aidan Harrison, Individually; Casey Lee, Individually; Emily Meadows, Individually; Melissa Aguado, Individually; Diler Mawi, Individually; (collectively the "Jail Defendants"); Quality Correctional Care, LLC; Polly Decker, Individually; Krista Sexton-Cox, Individually; Melissa Isle,

Individually; Jasmine Gill, Individually; Tatum Lyewski, Individually; Sheila Rice, Individually; and Mark Bender, Individually (collectively the "Medical Defendants) and alleges as follows:

## INTRODUCTION

1. Plaintiff, Sarah Bryant, is the sister of Adam Bryant, and Personal Representative of the Estate of Adam Bryant, deceased (hereinafter "Plaintiff"). As more specifically set forth below, Adam Bryant, during his incarceration at the Vigo County Jail ("the Jail"), which had contracted with Quality Correctional Care ("QCC") at all relevant times for the medical care of inmates, including Adam Bryant, who was subjected to Defendants' deliberate indifference to his serious and obvious medical needs. As a consequence, Bryant needlessly deteriorated and died while in the custody of the Jail and while under the care of medical providers with QCC. It is the purpose of this action to recover the actual damages Adam Bryant's estate has suffered, including a violation of his rights as guaranteed under the United States Constitution, Indiana State Constitution and/or Indiana Common Law, as a result of Defendants' wrongful conduct, as well as punitive damages from Defendants for their egregious conduct and to forever deter its repetition.

## JURISDICTION AND VENUE

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed to her brother by the Eighth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction over this case pursuant to the provisions of 38 U.S.C. §§1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367, and Plaintiff therefore also seeks to recover damages under the supplemental jurisdiction of this Court on her state claims of negligence, gross negligence, an alternate survival action, and

wrongful death. Vigo County, Indiana is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

**PARTIES**

3. Plaintiff, at all relevant times herein, resides in Sullivan County, Indiana.

4. Adam Bryant, deceased, was a 29-year-old resident of Sullivan County, Indiana before his death on or about December 25, 2022.

5. Defendant Vigo County, Indiana is a unit of local government organized under the laws of the State of Indiana. Defendant is a "person" under 42 U.S.C. §1983. The Vigo County Board of Commissioners is sued in its official capacity pursuant to I.C. § 34-13-3-3. At all times mentioned herein the County was responsible for the establishment of policies either formally or by custom and practice, and was responsible for the employment, training, supervision and conduct of Vigo County Sheriff.[1]

6. Defendants Vigo County and the Vigo County Sheriff at all relevant times herein, were responsible for the establishment of policies either formally or by custom and practice, and were responsible for the employment, training, supervision and conduct of the captain of the Vigo County Jail. They were at all relevant times state actors.

7. The Vigo County Sheriff, the Vigo County Jail Captain, and Vigo County Jail employees, Samantha Troutman, Aidan Harrison, Casey Lee, Emily Meadows, Melissa Aguado and Diler Mawi, were at all times mentioned herein officers, employees and/or agents of the Vigo County Jail responsible for monitoring Adam Bryant during his incarceration and knew of or witnessed Bryant's' physical and mental condition, the implements at his disposal, and the premises in which he was incarcerated. They further witnessed his deteriorating mental and

---

[1] At the time of Adam Bryant's death, John Plasse was the Vigo County Sheriff. As a result of Sheriff Plasse's death on July 24, 2024, the interim Sheriff, Derek Fell, is being named as a Defendant herein.

physical condition during his incarceration, and they responded with deliberate indifference or neglect or gross neglect, as described below. They were at all relevant times state actors.

8. Defendant Quality Correctional Care, LLC is a domestic company located in Muncie, Indiana, at all relevant times herein, contracted with the Vigo County Jail to be the medical provider for its facility. QCC physician Krista Sexton-Cox and nurses Polly Decker, Melissa Isle, Jasmine Gill, Tatum Lyewski, Sheila Rice and Mark Bender, were responsible for the medical care of all Jail inmates, including Adam Bryant. Their gross negligence, indifference, neglect and/or deliberate cruelty caused or contributed to Bryant's needless suffering and death.

## NATURE OF DEFENDANTS' CONDUCT

9. Defendants, individually and in conspiracy with one another, maintained and established inadequate practices and failed to train and supervise their employees. As a result, inmates have become severely ill, and some have died while in Vigo County's custody, including Adam Bryant.

10. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the State of Indiana and Vigo County. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the Defendants to employ qualified persons for positions of authority and/or medical supervision over inmates, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate and enforce appropriate operating policies and procedures either formally or by custom and practice to protect the constitutional rights of inmates like Adam Bryant, and/or to design,

construct or modify the premises of the Jail to properly house and safeguard individuals like Adam Bryant.

11. The Jail Defendants, by way of their employees, including officers and staff, are responsible for Bryant's death as a result of their failure to keep the Quality Correctional Care nurses informed about Adams deteriorating physical health and mental condition.

12. QCC's medical providers are responsible for Bryant's death as a result of their failure to properly monitor and medically treat Adam Bryant, and as a result of their negligent hiring, training, supervision, staffing and retention of medical care providers and nurses, including the individual QCC employees named herein.

13. The offenses further resulted from the failure of the Jail Defendants and the Medical Defendants to properly monitor inmates, including Adam Bryant. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Adam Bryant and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages his estate is entitled to recover.

## FACTS

14. Adam Bryant was arrested on or about December 8, 2022, on charges of criminal confinement and domestic battery, and was taken to the Vigo County Jail.

15. At the time of his arrest and incarceration at the Vigo County Jail, Adam Bryant was a healthy 29-year-old man.

16. Upon information and belief, and at all relevant times herein, QCC had in place a procedure, policy or practice of providing newly incarcerated individuals, including Adam Bryant, with a health evaluation within 3 days of the commencement of incarceration.

17. On or about December 11, 2022, Adam Bryant received an initial medical health and mental health assessment, wherein he underwent a physical and mental evaluation by QCC's medical staff, specifically Defendant nurse Jasmine Gill. The assessment included a collection of Adam Bryant's vital signs, a physical health examination and a mental health examination.

18. On December 14, 2022, Nurse Gill entered her notes from the intake assessment, including, height: 5'9", weight: 129.4 and BMI: 19.1. Nurse Gill also noted, "*c/o mental health symptoms. Pt has confirmed meds filled may 2022 trazadine 50mg qd, Lexapro 10mg qd, buspirone 10mg bid. Per Dr. Cox via webence buspar and Lexapro approved.*"

19. Over the next several days, Adam Bryant's physical health began to rapidly decline, including stomach pain, nausea, constipation, weakness, insomnia, confusion and dizziness.

20. On December 15, 2022, at 4:08 PM, Adam Bryant submitted a Grievance L1 indicating: "*i don't have an appetite, haven't eaten since I got here just picked at my trays here and there. I can hold liquids, I feel very week, shakes always cold. I need help or something.*"

21. On December 15, 2022, at 5:05 PM, Adam Bryant submitted Medical Request L1 stating, "*i need a liquid diet please, ive already explained my issues. Thank you.*"

22. On December 15, 2022, at 5:07 PM, Adam Bryant submitted a General Request L1 that said, "*i need a liquid diet please, ive already explained my issues with the doctor and medical. Thank you.*"

23. On December 15, 2022, at 12:06 PM, Adam Bryant was prescribed hydrochlorothiazide to be administered twice daily. He received his first dose at 9:03 PM on December 15, 2022. However, QCC's medication administration record indicates that he did not receive the medication on December 20, 21, 22, 23 and 24, and the note on his record says, "*medication not available – not administered / not completed*".

24. Three days after his initial request, Adam Bryant was notified that his request for a liquid diet in the form of protein shakes was approved on Dec 18, 2022.

25. On December 18, 2022, at 5:34 PM, Adam Bryant was taken to medical for complaints of stomach pain, which was attributed to no bowel movement for several days. He was advised by QCC nurse Polly Decker to "increase water intake." Nurse Decker also noted, "*Pt keeps asking for protein shakes. Advised he should be getting double trays, so he will not be getting protein shakes.*"

26. During the medical evaluation on December 18, 2022, Adam Bryant's vitals were recorded as height: 5'9", weight: 119.4 and BMI: 17.61. Defendant QCC's records indicate that he had lost ten pounds in seven days and his BMI had dropped from normal range to underweight evidencing malnutrition.

27. On or about December 19, 2022, Adam Bryant was placed in a cell by himself where he had limited interaction and/or communication with any person.

28. Adam Bryant finally began receiving protein shakes on December 20, 2022, at 7:25 PM, which was more than 2 full days after he was approved for them. Pursuant to the nursing order, Bryant was supposed to receive protein shakes twice daily. According to the Medication Administration Record, he received a protein shake only on the following dates and times:

| Date | Protein Shake Received |
|---|---|
| 12.20.2022 | 7:25 PM |
| 12.21.2022 | 8:38 AM |
| 12.22.2022 | 7:49 AM |
| 12.23.2022 | 9:02 AM and 11:07 PM |
| 12.24.2022 | 11:13 AM |

29. Over the next few days, Adam Bryant's physical health continued to deteriorate. He was unable to eat solid food but continued to hydrate with water. He was unable to have a

bowel movement. His body was cold and shaking. His physical health declined to the point that he appeared frail and weak, and his movement and balance were unsteady.

30. During telephone conversations with his mother on several occasions, Adam Bryant informed her that he was dying. On or about December 22, 2022, Bryant spoke with his mother for a brief time but told her that he was too sick to communicate. She advised him to contact the Chaplain.

31. Adam Bryant's mother followed up one of her conversations with him by sending a message to the Chaplain, in which she told the Chaplain that she thought her son was dying.

32. Upon information and belief and at all relevant times herein, the Jail Defendants and the Medical Defendants had in place procedures, policies or practices to conduct frequent checks, monitor and health assessments of inmates, including Adam Bryant.

33. Upon information and belief and at all relevant times herein, the Jail Defendants and the Medical Defendants failed to properly check on, monitor, and conduct health assessments of Adam Bryant, which failure was known to the Defendants.

34. QCC's medication administration record indicates that Adam Bryant received his medications (with the exception of hydrochlorothiazide) during med pass at 11:13 AM on December 24, 2022.

35. A video from Adam Bryant's cell on December 24, 2022, between 2:15 PM and the time he took his last breath at 10:31 PM shows that he was unable to stand without falling into his cell walls. He was visibly frail and weak, and he appeared to be in critical condition, suffering and in extreme pain. The video shows:

| | |
|---|---|
| 2:45 PM | A jail officer rolled a phone on a cart to Adam's cell so he could reach through a slot in the door to use it. He appeared confused and disoriented while he tried to dial a number several times but eventually gave up. He remained near the door lying on the floor, crying and holding his stomach. |

| | |
|---|---|
| 2:46 PM | A jail officer returned and hung up the phone, then rolled the phone cart away without checking on him. |
| 2:50 PM | Adam slid across the floor on his back to his bed. |
| 3:24 PM | Adam crawled to door and pushed the call button for help. Nobody came. He pulled himself up to the sink lost his balance and hit his head on the wall behind the sink. |
| 3:39 PM | A jail officer looked in the window of three other inmates in different cells, but did not check on Adam. |
| 4:23 PM | Adam crawled to door and pushed the call button for help. Nobody came. He crawled back to bed and fell asleep. |
| 4:45 PM | A jail officer opened his window and looked in, but Adam appeared to be asleep. |
| 5:40 PM | A jail officer delivered food through his door slot. Adam tried to stand up and walk to the door, but he fell. The jail officer saw him fall and went down the hall to tell another jail officer, but they did not come back to check on him. Adam tried to eat a few bites of food from his tray. |
| 5:53 PM | Adam slid his tray toward the door and crawled back to his bed. |
| 6:14 PM | A jail officer opened Adam's window to retrieve his tray. Adam pulled himself up and tried to walk toward the door to pick up his tray and put it through the slot. He appeared unsteady and off balance and he was drifting to his left. He turned around and crawled back to his bed. He struggled to pull himself up into his bed. |
| 7:06 PM | Adam fell off his bed and pulled his mattress onto the floor near the door. |
| 8:37 PM | Adam crawled to the call button and pushed it for help. Nobody came. He crawled to the toilet to try and pull himself up. He was barely able to hold his own weight. He appeared to have soiled his clothes, so he removed them and attempted to clean the floor and then crawled back to his mattress. |
| 9:17 PM | He crawled to the call button again and pushed it for help and then laid back down on his mattress. |
| 9:24 PM | A jail officer looked in Adam's window, but he was lying on his mattress and appeared to be sleeping. |
| 9:59 PM | Adam pulled his naked body upright and positioned himself so that he was sitting between the door and side wall. He pushed the call button several times. Nobody came. |
| 10:01 PM | Adam leaned back into the wall and hung his head to the side. This is the last time he moved. |
| 10:03 PM | A jail officer walked by Adam's cell but did not look in. |
| 10:31 PM | Adam stopped breathing. |
| 10:38 PM | A jail officer walked by Adam's cell but did not look in. |
| 10:54 PM | A jail officer walked by Adam's cell but did not look in. |
| 12:09 AM | A jail officer walked by Adam's cell but did not look in. |
| 12:30 AM | A jail officer walked by Adam's cell but did not look in. |
| 12:42 AM | A jail officer walked by Adam's cell but did not look in. |

36.  At approximately 12:52 AM, on December 25, 2022, a nurse with a medication cart arrived at his cell and opened the door to find Adam Bryant's lifeless body.

37.  Adam Bryant's cause of death was determined at autopsy to be hyponatremia – an excess of sodium, which can be reversed with a bag of saline.

38.  Defendants violated numerous common jail standards of practice in general, and/or Indiana and County regulations and written policies of the Jail in particular, intended to protect Adam Bryant.

## **COUNT I – 42 U.S.C. §1983**

39.  Paragraphs 1-38 above are incorporated herein by reference.

40.  The Jail Defendants and the Medical Defendants have, under color of law, deprived Adam Bryant of clearly established rights, privileges and immunities secured by the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution, including but not limited to, the right to be protected, the right to be provided adequate medical and mental health care for serious medical needs, and the right to be free from deprivations of liberty and needed care that are unreasonable and shock the conscience. The conduct of all the Jail Defendants and the Medical Defendants was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Adam Bryant's life as well as his rights and the risk of harm to him occasioned by such conduct.

41.  Plaintiff believes and, after reasonable discovery, will show that Adam Bryant's treatment by the Jail Defendants and the Medical Defendants was the result of customs and practices of the Jail Defendants and the Medical Defendants that were contrary to or expressly violated common standards of practice in jails, Indiana regulations, and written policies of the Jail, and that such customs and practices were the "moving force" behind Adam Bryant's death. Such

practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Adam Bryant, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

42. WHEREFORE, Plaintiff Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased, by counsel, respectfully prays that this Court enter judgment in her favor and against all Defendants in an amount that will fully and reasonably compensate the Estate of Adam Bryant for the damages suffered by Adam Bryant as set forth above, awarding Plaintiff: 1) all compensatory damages; 2) punitive damages; 3) reasonable attorney fees pursuant to 42 U.S.C. §1988; 4) the costs of this action; 5) interest as allowed by law; and 6) all other just and proper relief in law or equity.

## COUNT II – NEGLIGENCE

43. Paragraphs 1-42 above are incorporated herein by reference.

44. The Jail Defendants and the Medical Defendants owed Adam Bryant a duty of care.

45. The Jail Defendants and the Medical Defendants breached that duty of care by their acts of carelessness and negligence as set forth above.

46. By virtue of the foregoing, all Defendants were negligent and grossly negligent, which negligence proximately caused the injuries and death to Adam Bryant.

47. WHEREFORE, Plaintiff Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased, by counsel, respectfully prays that this Court enter judgment in her favor and against all Defendants in an amount that will fully and reasonably compensate the Estate of Adam Bryant for damages suffered by Adam Bryant as set forth above, and award Plaintiff 1)

compensatory damages; 2) funeral and burial costs; 3) lost earnings; 4) pain and suffering; 5) interest as allowed by law; and 6) all other relief just and proper in law or equity.

## COUNT III – WRONGFUL DEATH

48.  Paragraphs 1-47 above are incorporated herein by reference.

49.  The Jail Defendants and the Medical Defendants owed Adam Bryant a duty of care.

50.  The Jail Defendants and the Medical Defendants breached that duty of care by their acts of carelessness and negligence as set forth above.

51.  As a result of the Jail Defendants' and the Medical Defendants' negligence, Adam Bryant suffered a fatal bodily injury under Indiana common law and a wrongful death under I.C. §34-23-1-2, for which his estate is entitled to recover damages against governmental entities pursuant to I.C. §34-13-3-3.  The Jail Defendants and the Medical Defendants' wrongful conduct proximately caused Adam Bryant's death.

52.  WHEREFORE, Plaintiff Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased, by counsel, respectfully prays that this Court enter judgment in her favor and against all Defendants in an amount that will fully and reasonably compensate the Estate of Adam Bryant for the damages suffered by Adam Bryant as set forth above, awarding Plaintiff: 1) funeral and burial expenses; 2) lost earnings; 3) costs of administering the Estate; 4) reasonable attorney fees pursuant to I.C. §34-23-1-1; 5) interest as allowed by law; and 6) all other relief just and proper in law or equity.

## COUNT IV – ALTERNATE SURVIVAL ACTION

53.  Paragraphs 1-52 above are incorporated herein by reference

54.  The Jail Defendants and the Medical Defendants owed Adam Bryant a duty of care.

55. The Jail Defendants and the Medical Defendants breached that duty of care by their acts of carelessness and negligence as set forth above.

56. The acts and omissions of the Jail Defendants and the Medical Defendants caused Adam Bryant's losses and damages.

57. As a result of Jail Defendants' and the Medical Defendants' carelessness and negligence, Adam Bryant sustained injuries resulting in pain, suffering, and death. From the date of incarceration until the date of his death, Adam Bryant's mental and physical injuries impaired the quality and enjoyment of his life.

58. The injuries and damages to Adam Bryant were a direct and proximate result of the carelessness and negligence of the Jail Defendants and the Medical Defendants.

59. WHEREFORE, Plaintiff Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased, prays that this Court enter judgment in her favor and against all Defendants in an amount that will fully and reasonably compensate the Estate for the following damages: 1) Adam Bryant's pain and suffering; 2) Adam Bryant's lost earnings; 3) interest as allowed by law; 3) all other just and proper relief to which Adam Bryant would have been entitled had he survived his injuries, in law or in equity.

## JURY DEMAND

60. Plaintiff hereby demands a trial by jury.

Respectfully submitted,

**COHEN & MALAD, LLP**

*/s/ Gregory L. Laker*
Gregory L. Laker, Atty No. 10322-49
Andrea R. Simmons, Atty No. 11622-49
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
glaker@cohenandmalad.com
asimmons@cohenandmalad.com

*Counsel for Plaintiff, Sarah Bryant, as Personal Representative of the Estate of Adam Bryant, Deceased*